The Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. MJ18-406 |
| ) | |
| Plaintiff, ) | COMPLAINT for VIOLATION |
| ) | |
| ) | 21 U.S.C. §§ 841(a)(1) and |
| v. ) | 841(b)(1)(A) - Possession of Furanyl |
| ) | Fentanyl with Intent to Distribute |
| BRADLEY WOOLARD, ) | |
| ) | |
| Defendant. ) | |

BEFORE The Honorable Brian A. Tsuchida, United States Magistrate Judge, United States Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
**(Possession of Fentanyl Analogue with Intent to Distribute)**

On or about July 28, 2018, at Arlington, in Snohomish County, within the Western District of Washington, and elsewhere, BRADLEY WOOLARD did knowingly and intentionally to possess, with the intent to distribute, furanyl fentanyl, a substance controlled under Title 21, United States Code, Section 812, Schedule I.

COMPLAINT/WOOLARD - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that the offense involved one hundred (100) grams or more of a mixture or substance containing a detectable amount of furanyl fentanyl, an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

And the complainant states that this Complaint is based on the following information:

I, Joseph Cheng, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been so employed since August 2006. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I am currently assigned to the Bellingham Resident Office of the DEA's Seattle Field Division. My current assignment involves investigations of high-level drug trafficking organizations within the Western Washington area and elsewhere.

3. I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the

1  investigation of the distribution of cocaine, methylenedioxymethamphetamine (MDMA),
2  methamphetamine, heroin, marijuana, and other dangerous drugs.
3      4.   I have interviewed numerous drug dealers, drug users, and knowledgeable
4  confidential informants about the lifestyles, appearances, and habits of drug dealers and
5  users. I have become familiar with the manner in which narcotics traffickers smuggle,
6  package, transport, store, and distribute narcotics, as well as how they collect and launder
7  drug proceeds. I am also familiar with the manner in which narcotics traffickers use
8  telephones, cellular telephone technology, internet, pagers, coded communications and
9  slang-filled conversations, false and fictitious identities, and other means to facilitate
10 their illegal activities and mislead law enforcement investigations. I have had discussions
11 with other law enforcement personnel about the packaging and preparation of narcotics,
12 the methods of illegal narcotics traffickers, and the security measures that narcotics
13 traffickers often employ. I have examined narcotics customers' supplier lists, pay/owe
14 ledgers maintained by traffickers, and other documentation related to narcotics
15 trafficking. I have also examined documentation of various methods by which
16 methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled,
17 transported, and distributed. I have participated in hundreds of hours of surveillance of
18 narcotics traffickers. During surveillance, I have personally observed narcotics
19 transactions, counter surveillance techniques, and the ways in which narcotics traffickers
20 conduct clandestine meetings.
21     5.   I have also participated in investigations that involved the interception of
22 wire communications, including four investigations of large-scale drug trafficking
23 organizations in which I was the case agent and each of which resulted in the conviction
24 of approximately 20 individuals on federal drug-related charges. In addition to these
25 cases, I have participated in numerous other wiretap investigations in a variety of roles,
26 including by conducting physical surveillance and monitoring intercepted
27 communications. I have been directly involved in the review and deciphering of
28 intercepted coded conversations between narcotics traffickers that were later corroborated

by surveillance or by targets' statements. Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers.

6. The facts in this affidavit come from my training, experience, and information obtained from other agents and witnesses. I have not included every fact known concerning this investigation. I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested arrest warrant.

## II. PURPOSE OF AFFIDAVIT

7. This affidavit is made in support of a complaint charging BRADLEY WOOLARD with the offense of Possession of Furanyl Fentanyl with the Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2. Fentanyl is a Schedule II substance under the Controlled Substances Act.

8. Based on my training and experience, and information relayed to me by other law enforcement personnel I know that furanyl fentanyl is a Schedule I narcotic and a highly a dangerous drug. It is an analogue of fentanyl. Fentanyl is a synthetic opioid that is 50 times more toxic than heroin. In its purest form fentanyl is a white powder or in grains similar in size to table salt. For most people, two to three milligrams of fentanyl is capable of inducing respiratory depression, arrest and possibly death. Two to three milligrams of fentanyl is comparable in size to five to seven individual grains of table salt. Additionally, counterfeit Percocet pills have been associated with multiple overdose deaths in Skagit and Snohomish Counties in 2018 and fentanyl has been linked to multiple overdoses in Snohomish County, Washington.

9. On July 27, 2018, based upon an ongoing investigation, investigators followed a gray Toyota 4 Runner as it drove south to Arlington, Washington. At approximately 9:38 p.m., investigators observed the gray Toyota 4 Runner park near the Safeway, located at 20500 Olympic Place, Arlington, Washington. Investigators then observed the passenger get out of the gray Toyota 4 Runner, access the back of the

1 vehicle and walk away from the vehicle. The driver of the vehicle was not observed getting out of the vehicle at that location. Investigators then observed the gray Toyota 4 Runner depart Safeway and drive south. Investigators followed the gray Toyota 4 Runner until it parked in front of a residence located at 9717 99th Avenue Northeast, Arlington, Washington, which is the residence on BRADLEY WOOLARD, at approximately 9:45 p.m (hereinafter "WOOLARD residence"). Investigators then observed the driver of the vehicle walk into the front door of the WOOLARD residence. Approximately six minutes later at 9:51 p.m., investigators observed the gray Toyota 4 Runner pull out of the Residence.

10. Investigators continued to follow the gray Toyota 4 Runner as it arrived at the same Safeway at approximately 10:03 p.m. Prior to the arrival of the gray Toyota 4 Runner, investigators observed the female, subsequently identified as Mikala MURPHY, sitting in front of the Safeway. Investigators did not observe anything in MURPHY's hands at that time. Investigators observed MURPHY get into the gray Toyota 4 Runner and depart the Safeway. Investigators followed the gray Toyota 4 Runner until a traffic stop was conducted on the vehicle for suspicion of involvement in drug trafficking activity, based on the prior investigation. At that time, the driver of the vehicle was positively identified as Griffin THOMPSON, via his Washington driver's license and the passenger was identified as Mikala MURPHY, via her US passport.

11. Soon after the traffic stop, a narcotics detecting K-9 was deployed to sniff the exterior of the vehicle and gave a positive alert to the odor of narcotics emanating from the vehicle. Investigators then subsequently searched the vehicle pursuant to the vehicle exception. During that search, investigators located and seized from underneath the front passenger seat (in an area that could only be accessed from the rear seats) a white box which contained 3 ziploc baggies of light colored pills marked "M30." An open-source internet search indicated that pills marked "M30" are 30 milligram Oxycodone. Oxycodone is a Schedule II narcotic. Investigators believed these pills to be pills pressed from the fentanyl powder and that each baggie contains 1,000 fentanyl laced

COMPLAINT/WOOLARD - 5

pills. Based on agent safety concerns, field tests were not conducted on the pills. During a pat-down of THOMPSON's person, approximately $8,122 of US currency was recovered. The cell phones were seized during the arrest of THOMPSON and MURPHY. THOMPSON and MURPHY were booked into Snohomish county jail on drug trafficking charges, and were later released.

12. A federal search warrant was obtained authorizing the search of the cell phones seized from THOMPSON and MURPHY. Found in the phone were text messages with 509-885-2498, stored under the name "Robbie." On June 3, 2018, "Robbie" sent "Got a good friend possibly wanting some quantity of those perks." THOMPSON replied, "yeah when" and "how many." "Robbie" replied, "1000 but would need to talk price." THOMPSON replied, "word yeah I can brab that, when do you want it. What do you want to pay." "Robbie" replied, "10 a piece?" THOMPSON said, "I can't get them that cheap, it would be like 15ish." Investigators believe that "Robbie" asked THOMPSON for 1000 Percocet pills, which investigators believe are fake Percocet pills containing fentanyl, and that THOMPSON said that he could get them for $15 each. Based on the text messages in THOMPSON's phone, the pills seized from THOMPSON's vehicle and other information developed during this investigation, investigators believe that THOMPSON is involved in distribution of fake Percocet pills containing fentanyl.

13. On July 28, 2018, the Honorable Mary Alice Theiler signed a search warrant authorizing the search of the WOOLARD Residence. During the execution of the search warrant that day, investigators found approximately 10,000 of the counterfeit Percocet pills located in the office of the main residence. In this office, there were numerous documents with the name Bradley WOOLARD. The pills located in the office were consistent with the appearance of the pills seized from THOMPSON on July 27, 2018. Three of these pills were provided to the 10th Civil Support Team, Department of Defense, to test in their certified laboratory. The pills tested positive for the presence of furanyl fentanyl, an analogue of fentanyl. The pills weighed approximately 1,988 gross

grams. Investigators also found approximately $400,000 in cash located in two safes, one in the office and one in the master bedroom closet. Items of dominion and control with WOOLARD's name were found in the office and master bedroom. WOOLARD also had four high valued vehicles at the address, including a 2014 Nissan GTR, registered to Fun Times Trust at the WOOLARD Residence, valued at approximately $100,000, a 2017 Harley Davidson motorbike, valued at approximately $25,000, a 1965 Chevrolet Nova valued at approximately $35,000, and a 2017 GMC Denali, valued at approximately $65,000.

14.     Additionally, recovered during the search of the WOOLARD Residence from the trash in the office of the residence were two shipping labels. One shipping label had the sender and recipient removed but described the contents as "Lab supplies" with a weight of 0.1 kilograms, a value of $5.00 and goods' origin of "CN". A second shipping label was largely intact and also listed the contents as "Lab supplies" with the same weight, value and goods' origin. This shipping label showed "Danette Skelton" and "32326 Mountain Loop Hyway, Granite Falls WA USA 98252" as the "ship to" information and the "from" information listed "Wuzong Hui" and "China 61 Jianning Road No. 3 Building 1502 Room GulouQu, Nanjing Jiangsu 210000." Additionally the shipping labels listed tracking number LS508043116CN. According to the USPS website, this package was delivered to the Granite Falls address on January 29, 2018.

15.     In the late evening of August 18, 2018, members of SRDGTF executed a federal search warrant at the WOOLARD Residence, signed by the Honorable David W. Christel on the same date. During the search of the property, approximately $20,000 U.S. Currency was located in a safe under the master bathroom sink, in the floor board. Additionally, three firearms were located in the attic. These firearms were in the ceiling insulation. Because of the late hour, the WOOLARD Residence was secured overnight by SRDGTF until August 19, 2018. During daylight hours, the search continued and agents located approximately $270,000.00 U.S. Currency, which was located in airtight, plastic receptacles. One receptacle, contained approximately $100,000.00 U.S. Currency,

was located in the insulation, behind the water heater in the southeast shop. The second, similar receptacle, was located in the back of a tool chest in the same shop. The third receptacle, was located in the bottom drawer of a dehydrator. The dehydrator was located in the northeast shop.

16. Additionally, multiple weapons were located in a concealed room in the loft of the southeast shop, hidden behind a metal wall locker. This concealed room shares a wall with the second floor of the adjoining apartment. The weapons varied from assault rifles to pistols with homemade silencers. The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) assisted with the seizure of these weapons and thousands of rounds of live ammunition.

17. At approximately 7:16 p.m., investigators placed surveillance team members in the wood line of the property to maintain positive control of the WOOLARD Residence, with law enforcement presence. At approximately 9:22 p.m., a dark colored SUV arrived with three male occupants. Onsite surveillance team members observed the targets enter the main residence briefly, and then move to the rear of the property. The targets entered both the northeast and southeast shops and returned to the SUV a short time later. They appeared to load items into the vehicle. The three targets reentered the SUV at which point the vehicle proceeded to the exit. Surveillance members intercepted the SUV prior to it exiting onto 99th Avenue North East. All occupants were detained without incident.

18. The SUV was subsequently searched using the automobile exception. During the search of the vehicle, approximately $60,000 U.S. Currency was located under the passenger seat along with two, plastic bottles containing gold coins. These plastic bottles had a durable string approximately 12 inches in length wrapped around the top of the bottle. Located under the driver seat was approximately $50,000 in U.S. Currency.

19. Investigators advised EDWARDS, who was one of the three individuals detained leaving the WOOLARD Residence, of his legal rights, which he waived.

EDWARDS stated that 'Shawna' (known to law enforcement as Bradly WOOLARD's wife Shawna Bruns) had requested him, and the two other individuals respond to the WOOLARD Residence, and retrieve items for her children as well as hidden U.S. Currency. EDWARDS said 'Shawna' provided specific locations for them to check. EDWARDS said upon arrival, one of the other individuals entered the main residence and returned a short time later, and the three individuals proceeded to the two shops where the U.S. Currency was located. EDWARDS stated the three of them entered into the adjoining apartment, where 'Shawna' gave them instructions to look behind the toilet paper roll for the string which would allow access to the gold and U.S. Currency which was concealed behind drywall. EDWARDS also relayed that 'Shawna' told them to look in the insulation in the northeast shop, as U.S. Currency was located in various location. EDWARDS told investigators he believed there was additional money hidden in the walls of the apartment in the southeast shop.

20.   On August 22, 2018, agents executed a further federal search warrant at the WOOLARD residence, signed by the Honorable Paula McCandlis. Agents found approximately $200,000 in U S Currency concealed in a dishwasher in the residence.

## V.   CONCLUSION

21.   Based on the above, there is probable cause to believe that on August 3, 2018, BRADLEY WOOLARD knowingly and intentionally possessed fentanyl with the intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

JOSEPH CHENG, Complainant
Special Agent
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on 1st day of September, 2018. Based upon the Complaint and the affidavit, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this <u>1st</u> day of September, 2018.

_____
HON. BRIAN A. TSUCHIDA
United States Magistrate Judge

COMPLAINT/WOOLARD - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970