UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRADLEY WOOLARD,<br>JEROME ISHAM,<br><br>Defendants. | CASE NO. CR18-217RSM<br><br>ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT |

This matter comes before the Court on Motions to Dismiss for Government Misconduct filed by Defendants Bradley Woolard and Jerome Isham. Dkts. #420 and #431 (filed under seal). Mr. Woolard moves "to dismiss all charges due to outrageous government misconduct," arguing that the Government interfered with his constitutional right to effective counsel under the Sixth Amendment by "standing silently and allowing a lawyer burdened by direct, irreconcilable conflicts of interest to represent Mr. Woolard to Mr. Woolard's detriment." Dkt #420 at 1. Mr. Isham moves for the same relief on essentially the same grounds. Dkt. #431 at 1. Given the overlapping issues, the Government has filed a single opposition brief. Dkt. #541. The Court has reviewed all of this and reply briefing and finds it can rule without needing an evidentiary hearing or oral argument.

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 1

A. **Factual Background**

On July 28, 2018, DEA agents searched Mr. Woolard's home pursuant to a search warrant supported by information from a confidential source ("CS1"). *See* Dkt. #65-1 (Search Warrant Affidavit) (filed under seal). There were several more searches of Mr. Woolard's properties pursuant to additional warrants that also relied on the same confidential source. This confidential source had been represented by attorney Christopher Black between 2013 and 2016. Mr. Black would later go on to represent Defendants Woolard and Isham for a period of time in their cases.

CS1's true name was not included in any of the search warrants. Government counsel did not reveal the name of CS1 to Mr. Black at any time he represented either Mr. Woolard or Mr. Isham, which is not to say that Mr. Black did not at some point learn of a potential conflict.

On July 30, 2018, Mr. Black contacted AUSA Kate Vaughn to inform her he had been retained by Mr. Woolard. Mr. Woolard says he specifically engaged Mr. Black to represent him regarding potential criminal charges stemming from the July 28 search of his home, to explore the legality of the searches, to challenge any government case brought against him, and to negotiate a possible plea agreement if he was to be charged.

On August 3, 2018, DEA and US Postal Service Investigators conducted search warrants at the residence of Sadie Bates. During the search, Mr. Isham arrived, and agents detained him and obtained warrants to search his vehicle and residence. Johnson Decl. at ¶ 19. Isham was arrested that same day. Case No. CR18-199 JCC, Dkt. #1. He was represented at his initial appearance on August 6, 2018, by a federal public defender. Mr. Isham was first indicted on August 15, 2018. Attorney Black filed a Notice of appearance in Mr. Isham's case on August 9, 2018, and remained counsel until October 24, 2019. *See* Dkt. #194; Case No. CR18-199JCC, Dkt. #9.

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 2

On September 1, 2018, Mr. Woolard was arrested in San Ysidro, California, when he tried to enter the United States from Mexico. That same day, a complaint was filed in this District charging Mr. Woolard with a single count of possession of furanyl fentanyl with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2. Dkt. #1.

Soon after Mr. Woolard was arrested, Government prosecutors had their first conversation with Mr. Black about his potential conflict of interest if he were to represent both Mr. Isham and Mr. Woolard if it turned out they were members of the same conspiracy. Dkt. #541-1 ("Johnson Decl."), ¶ 28. Prosecutors told Mr. Black they suspected these two Defendants were part of the same conspiracy based upon the appearance of the pills, shipping labels, and the presence of the same white boxes in Mr. Woolard's residence and Mr. Isham's residence. *Id*. Prosecutors encouraged Mr. Black to talk to his clients. In a subsequent conversation, Mr. Black told these prosecutors that he had spoken to Mr. Isham, who insisted he did not know, or even know about, Mr. Woolard. Mr. Black said that he did not believe that he had a conflict. *Id*.

Mr. Woolard made his initial appearance in the Western District of Washington on October 5, 2018. Dkt. #25. There is no indication Mr. Black met his client in person before this. Mr. Black did not appear in Court on Mr. Woolard's behalf (he was represented by attorney Gregory Murphy). On October 9, 2018, attorney David Hammerstad filed a notice of appearance for Woolard. Dkt. #27. Mr. Woolard moved to replace Mr. Hammerstad with his current counsel Mr. Camiel on February 4, 2019. Dkt. #44. Mr. Black has never filed a notice of appearance in this case.

In approximately April 2019, Government prosecutors identified what they thought was conclusive evidence showing that the Woolard and Isham cases were, in fact, connected beyond just the Chinese supplier. They brought this to Mr. Black's attention. Johnson Decl. at ¶ 63. In

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 3

the ensuing discussions, the Government advised Mr. Black that Mr. Isham might be superseded into the same indictment as Mr. Woolard, and that Mr. Black had previously represented CS1. *Id.* at ¶ 66.

Mr. Black withdrew from representing Mr. Woolard on October 9, 2019.

On October 24, 2019, Mr. Black met with Mr. Isham and informed him that new counsel would be appointed due to the potential conflict. Attorney Michael G. Martin, was appointed that same day and met with Mr. Isham. *See* Dkt. #194.

Defendants' new counsel has filed nearly twenty pretrial, dispositive, or evidentiary motions in this case, and has had over 18 months to prepare for trial, which is set to occur next month.

**B. Legal Standard**

Defendants primarily base these Motions on the Sixth Amendment right to counsel.[1] The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14, (1970). Counsel can deprive a defendant of the right to effective assistance by failing to render "adequate legal assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).

---

[1] Mr. Woolard and Mr. Isham also contend that the Government has engaged in "outrageous conduct." Dkt. #420 at 7 (citing *United States v. Russell*, 411 U.S. 423 (1973); *Unites States v. Stinson*, 647 F.3d 1196 (9th Cir. 2011); *United States v. Bogart*, 783 F.2d 1428 (9th Cir. 1986)); Dkt #431 at 20. Dismissing an indictment for outrageous government conduct is an available remedy in "extreme cases" where the conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice." *Stinson*, 647 F.3d at 1209 (internal quotation marks omitted). As stated below, the Court does not find that the Government substantially interfered with these Defendants' Sixth Amendment right to effective assistance of counsel. Much of the alleged conduct in question was reasonable under the circumstances. Defendants fail to point to any basis for the Court to conclude that the Government has engaged in outrageous conduct justifying dismissal under this standard.

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 4

A defendant asserting an ineffective assistance of counsel claim typically must show (1) that defense counsel's performance was deficient and (2) that counsel's deficient performance affected the outcome of the defendant's case. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Conflict of interest claims such as those asserted in this case are a "specific genre" of ineffective assistance of counsel claim. *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996). In *Cuyler v. Sullivan*, *supra*, the Supreme Court held that a defendant who asserts a conflict of interest claim on appeal or in habeas proceedings generally must demonstrate only that an actual conflict of interest adversely affected his lawyer's performance. 446 U.S. at 348. The defendant need not demonstrate the second prong of the *Strickland* test—that the lawyer's deficient performance affected the outcome of the case. *Cuyler*, 446 U.S. at 349–50; *see also, United States v. Wright*, 745 F.3d 1231, 1233 (D.C. Cir. 2014).

To establish an actual conflict of interest, "the defendant must show: (1) that his attorney's 'earlier representation of the witness was substantially and particularly related to counsel's later representation of the defendant,' or (2) that his attorney 'actually learned particular, confidential information during the prior representation of the witness that was relevant to defendant's later case.'" *United States v. Lemieux*, 532 F.Supp.2d 225, 231 (D. Mass. 2008), (quoting *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987)). In a case involving the successive representation of clients, a conflict of interest may exist only if the two clients' cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalty. *United States v. Cervantes*, 41 Fed. Appx. 918, 922-23 (9th Cir. 2002); *United States v. Wheat*, 813 F.2d 1399, 1402 & n.1 (9th Cir.1987).

Once an actual conflict is shown a defendant need only demonstrate "that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *United States v. Miskinis*, 966

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 5

F.2d 1263, 1268 (9th Cir. 1992) (citation omitted).  Prejudice is presumed where a petitioner demonstrates an actual conflict and some effect on the representation.  *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978).

### C. Request for an Evidentiary Hearing

Defendants request an evidentiary hearing.  The Government argues that such is not required when the allegations in a motion would not entitle the defendants to the relief they are seeking, or when the issues can be resolved on the record.  Dkt. #541 at 17 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (a hearing is not required if the allegations would not entitle the petitioner to relief under Section 2254(d)); *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the . . . record."); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010) (finding "a district court is not obligated to hold evidentiary hearings to further develop the factual record" when the record is "amply developed" and explaining that "[d]istrict courts have limited resources (especially time), and to require them to conduct further evidentiary hearings when there is already sufficient evidence in the record to make the relevant determination is needlessly wasteful")).

The Court agrees with these standards and finds that an evidentiary hearing is unnecessary based on the analysis below, specifically that the allegations of conflict, even if true, fail to demonstrate an adverse effect on Defendants' cases, or that such has not been cured by the subsequent representation of new, highly qualified counsel for both Defendants.  Even if an adverse effect could be demonstrated, defendants have failed to show that such warrants the only relief requested—dismissal.  The undisputed timing of events supports this conclusion.  There is no need to develop a further evidentiary record.

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 6

### D. Analysis

Defendants point to three conflicts: (1) Attorney Black's conflict in representing CS1 and Mr. Woolard; (2) his conflict in representing CS1 and Mr. Isham; and (3) his conflict in representing Mr. Woolard and Mr. Isham.

Mr. Woolard argues, "[u]pon receipt of Mr. Black's July 30th email, the government should have realized Black had a conflict and immediately advised him that [he] could not represent Mr. Woolard so that Mr. Woolard could then retain an attorney unburdened by the conflict." Dkt. #420 at 3. Mr. Woolard contends that "[a]s a result of the multiple conflicts described above, the government knew that Mr. Woolard's attorney could not investigate and challenge the information about [CS1] used in the search warrants, and could not negotiate any plea agreement that might require one of Black's clients providing information about his other client." *Id*. at 6. Mr. Woolard argues there was thus a "lapse in representation." *Id*. at 11.

Mr. Isham says the Government interfered with his Sixth Amendment right to effective counsel "by standing silently and allowing a lawyer burdened by direct, irreconcilable conflicts of interest to represent Mr. Isham." Dkt. #431 at 1. Mr. Isham contends the violation in this case "specifically occurred during the critical, pre-trial, plea negotiations stage and went on for a period of nearly 15 months during which two superseding indictments were returned charging Mr. Isham, the first of which joined him with other defendants, increasing his mandatory minimums should he be convicted and exacerbating the conflict by introducing a co-defendant also previously represented, in the joined case, by Mr. Isham's lawyer." *Id*. at 7. Mr. Isham argues he was harmed by the creation of "systemic problems" to joint defense efforts, plea bargaining endeavors, testing the evidence, and that this created an unfair advantage to the

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 7

Government. *Id*. at 24–25. Mr. Isham argues that he "was harmed beyond measure and no mechanism exists to remedy this harm other than full dismissal of the charges." *Id.* at 28–29.

The Government responds that Mr. Woolard has failed to show that Mr. Black's earlier representation of CS1 was "substantially and particularly related to his later representation of the defendant," or that Mr. Black 'actually learned particular, confidential information during the prior representation of the witness that was relevant to defendant's later case." Dkt. #541 at 6 (citing *United States v. Lemieux*, *supra*).

The Government argues the same is true for the CS1-Isham conflict, and that it is "even more strained" because "CS1 was barely mentioned in DEA Agent Cheng's search warrant affidavit for Isham's properties, and this information was included only as background." Dkt. #541 at 7.

Finally, the Government acknowledges that the Woolard-Isham conflict "was an actual conflict," but maintains it lasted only briefly and "resulted in no prejudice to either defendant." Dkt. #541 at 7. The Government has been forthright in detailing its suspicions that Mr. Woolard's and Mr. Isham's cases were related and when it communicated those suspicions to Mr. Black at various stages as the evidence developed in this case.

Defendants certainly disagree with the Government's position as to all three conflicts and call for an evidentiary hearing to develop the record of what was known by who, and when. Ultimately, however, these Motions turn on Defendants' ability to demonstrate some adverse effect on their cases. Defendants must show that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *Miskinis*, *supra*. Because the conflict occurred prior to trial, years prior to trial in this case, the Court agrees with the Government that any claim of an adverse effect is totally washed out by the efforts of Defendants' new counsel to fight for their clients

ORDER DENYING MOTIONS TO DISMISS FOR GOVERNMENT MISCONDUCT – 8

through substantial motions practice and trial preparation. *See* Dkt. #541 at 10–12. New counsel has not suddenly accomplished what Mr. Black failed to do in his representation. Mr. Isham has failed to demonstrate to the Court that the "systemic problems" mentioned in his Motion have lingered into the last eighteen months of this case. Furthermore, Defendants cannot articulate any effect on *trial*; such would strain credulity given that trial has not occurred yet and that pretrial preparation has occurred under new counsel.

Mr. Woolard's argument that he suffered a "lapse in representation," while not necessarily dispositive, is also undermined by the fact that he was represented by other highly capable counsel at every stage of this case, and certainly at the stages that have mattered most—the filing of pretrial motions and, presumably, at the forthcoming trial. There is no demonstration of an adverse effect.

Given all of the above, and having reviewed the briefing, along with the remainder of the record, the Court hereby finds and ORDERS that the Motions to Dismiss for Government Misconduct filed by Defendants Bradley Woolard and Jerome Isham, Dkts. #420 and #431, are DENIED.

DATED this 16th day of June, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE