THE HONORABLE JUDGE COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRADLEY WOOLARD,<br>Defendant. | No. CR18-217-RSM<br><br>DEFENDANT WOOLARD'S SENTENCING MEMORANDUM |

Bradley Woolard though his counsel submits this memorandum regarding his sentencing scheduled for November 30, 2021. This case went to trial and Mr. Woolard was convicted of drug and money laundering charges as well as being a drug user in possession of a firearm, but he was acquitted of the possession of firearm in furtherance of drug trafficking charge.

**Summary of Defense Argument**

The charged offense conduct in this case is extremely serious and there is no doubt that fentanyl is a dangerous substance. A significant prison sentence is warranted. But the length of sentence being sought by the government and U.S. Probation is extraordinarily excessive and appears to be an attempt to extract a penalty for Mr. Woolard's decision to go to trial. In comparison with other sentences for similar conduct, a life or de facto life sentence is unjust. Bradley Woolard's minimal criminal history, strong family support, history of legitimate employment, and his struggles with drug addiction are sufficiently mitigating to merit a significant term in custody but a lesser sentence than sought by the United States Attorney or the United States Probation Office.



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

**Defense Sentence Recommendation**

For the reasons set forth below, Bradley Woolard should receive a sentence of 144 months in prison for his convictions.[1] Such a sentence would be sufficient, but not more than necessary to achieve the policy goals set forth by congress. Such a sentence provides for just punishment, promotes respect for the law and acts as a specific and general deterrent. He also requests that the court recommend placement at FCI Sheridan and that he be allowed to participate in the RDAP program.

**United States Sentencing Guideline Calculations**

Defendant filed objections to several of the USSG guideline enhancements sought by the government and by the United States Probation Officers.

**Paragraph 29:** Defendant objects to the finding of a level 36 base offense level. The jury made no such determination. The jury found as to Count 1, the Conspiracy, which is the controlling count for guideline purposes, that the government had proven 400g of fentanyl and 100g of furanyl fentanyl. Mr. Woolard adopts the arguments regarding drug quantity made by Mr. Isham. Dkt. No. 961 USSG 2D1.1(5) provides that between 400g and 1.2KG of fentanyl is scored at level 30. Furanyl fentanyl of 100g to 300g is also scored at level 30.

**Paragraph 30:** Defendant objects to the 2-level enhancement for possession of a dangerous weapon. The jury acquitted Mr. Woolard of count 9 charged under 18 U.S.C. 924(c). This verdict indicates that the jury did not believe the firearms that were hidden away and inaccessible were related to the drug offenses. Application Note 2D1.1, 11(a) provides:

[1] A sentence of 144 months falls between the sentences imposed for Mr. Pelayo who was convicted of a 924(c) charge as well as the drug and money laundering offenses and received the mandatory minimum term of 180 months, and Mr. Isham who received a sentence of 120 months and who had a lesser role but had four prior felony level convictions including two for firearm offenses.



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

> The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

Mr. Woolard's possession of firearms is distinguishable from his codefendant Mr. Pelayo who was convicted under 18 USC §924(c). The government presented no text messages, witness testimony or other evidence showing that Mr. Woolard ever carried any firearm during a drug transaction or even ever bragged about displaying or possessing a firearm in relation to drug possession. Instead, the evidence showed Mr. Woolard's firearms stored away, unloaded in inaccessible places. None were found in the living area of the residence or in any vehicle. All the evidence as supported by the jury verdict show that the possession of these firearms was not "connected with the offense." Mr. Woolard's conviction for being a drug user in possession of firearms, Count 8 does not alter this analysis. The drug user/possession charge is based upon the status of the defendant-being a drug addict. Much like a felon in possession of a firearm charge, the drug user-possession charge is not based on the purpose or reason for the possession of the firearms but only on the status of the defendant.

**Paragraph 31**: Criminal Livelihood Enhancement 4B1.3

To qualify for this enhancement the defendant must not engage in "regular, legitimate employment" or that employment must have been "merely a front for the defendant's criminal conduct. While there was evidence that Mr. Woolard made a substantial sum of money from the conspiracy, there was substantial evidence that he also had regular and legitimate employment buying, renovating, and selling real estate and that he earned substantial income from that activity. The application notes of 4B1.3 provides:



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

"***Pattern of criminal conduct***" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses.
2. "***Engaged in as a livelihood***" means that (A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; **and** (B) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.*, the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for the defendant's criminal conduct).

**Obstruction Enhancement**

The government has argued for an obstruction enhancement based on statements by Ms. Bruns that Mr. Woolard made threats against Mr. Thompson. The Probation Officer has correctly not included that enhancement. PSR ¶ 26 There is no corroboration of such threats and Ms. Bruns credibility is suspect as the government itself noted during her detention proceedings. Moreover, Mr. Woolard has no history of assaultive or violent behavior.

**Inconsistent application of the Sentencing Guidelines:**

The government appears to selectively use certain USSG § 2D1.1enhancements based on whether a defendant cooperates with the government, and whether a defendant exercises the right to trial. The government did not argue for sentencing enhancements for marketing the fentanyl laced pills as M-30 pills or the criminal livelihood enhancement for any of the codefendants who waiver their right to trial. This includes Ms. Bruns who admitted recruiting Griffin Thompson to sell the same pills Mr. Woolard is being held responsible for participating in the distribution of these fentanyl laced pills. The government calculated Ms. Bruns base offense level as 34 plus 2 levels for money laundering. The government did not seek any enhancement under 2D1.1 for criminal livelihood, or seek the 4-level enhancement for importing fentanyl or for marketing the pills as oxycodone pills under 2D1.1(b)(13). Similarly,



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

for codefendants Lugo and Mantie who have not yet been sentenced, the government is not seek either of these enhancements. In the government sentencing memorandum for Griffin Thompson (Dkt. 881) the government did not seek an enhancement under 2D1.1(b)(13) even though Thompson was selling the same M-30 pills-marketing them as Percocet pills and admitted to doing so for years before Mr. Woolard allegedly began.

The government argument for such enhancements only for the defendants who went to trial is a clear example of the attempt to extract a trial penalty for those who decide to exercise their right to trial.

**Mitigating Factors**

The government paints Mr. Woolard as someone who has no mitigating qualities, and who is deserving of nothing short of a de facto life sentence. But Mr. Woolard has minimal criminal history, a long track record of legitimate employment, and strong family support. While "greed" was arguably a factor in his conduct, so was his own overwhelming addiction to the very pills he was convicted of selling.

As the probation officer notes, Mr. Woolard "endured physical and verbal abuse as a child." As a result, he had difficulty in school and left school early. But he obtained his GED, worked regularly, and started a career remodeling and selling home. His life took a major turn after he suffered a broken ankle and soon became addicted to opiates. That addiction lasted up to his arrest in 2018.

**Trial Penalty**

This Court has often said that it does not believe in penalizing a defendant for going to trial. The government does not appear to share that philosophy. Mr. Woolard attempted to resolve this case short of trial, but the government declined to engage in meaningful plea negotiations and insisted that Mr. Woolard plead guilty as charged to a 15-year mandatory minimum sentence including the 18 USC 924(c) offense that the jury returned a verdict of not



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

guilty. It is clear the government decided early on to make an example of Mr. Woolard. And now, the government seeks to ignore the jury verdict and seeks a sentence as if he was also convicted of the 18 USC 924(c) charge. This can only be characterized as a "trial penalty" against Mr. Woolard for exercising his right to trial.

**Deterrence**

The government argues that a decades long sentence is necessary to deter others from this type of offense. But what the government is really attempting to deter is a defendant exercising their constitutional right to trial. The message the government is sending is that if someone engages in such conduct *and* they cooperate with the government, they will get a minimal sentence-in this case almost uniformly time served. But if you go to trial, you risk life in prison, even when acquitted of some of the charged offenses. Such a message does not promote respect for the law, but instead sends a chilling message to those who consider challenging the government evidence through pretrial motions and trial.

**Sentence Disparity**

The government characterizes Mr. Woolard as one of the most prolific fentanyl pill dealers in the history of this district.[2] But there have been other large drug cases where defendants received far less time than the government seeks here and there are larger cases now being prosecuted.[3] All the cooperating coconspirators who dealt with the same pills and who were actively engaged in the charged conduct have now received "time served" sentences. A review of other cases also demonstrates the disparity.

**Codefendant Sentences:**

Codefendants who cooperated in the case have been rewarded so dramatically as to create further sentence disparity. Griffin Thompson who admittedly sold thousands of pills for over a decade-long before Mr. Woolard began- received a sentence of time served-amounting

[2] As an example, while approximately 12,000 pills were found during the search of Woolard's residence, a recently charged defendant is charged with possession over 100,000 such pills found during the search of his home. CR.21-00547 *USA v. Cabrales and Betancourt*.
[3] See Disparity Chart Attached



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

to only several days in custody. Shawna Bruns who the government alleged actively participated in the sales of thousands of pills and who recruited Thompson to sell pills received a time served sentence of about 15 months. Keith Strand who sold pills, recruited his girlfriend to receive packages of fentanyl and ordered pill presses had originally been sentenced to 28 months, but after cooperating got time served-mere days in custody. Mr. Tabares guideline range was 70-87 months and the government recommended 20 months, but he received time served. Two other codefendants who did not cooperate but were deeply involved in the distribution of the same pills at 10-year mandatory minimum quantity levels, Jose Lugo and Tim Mantie were both offered plea agreements involving a range of 0-72 months based on their giving up their right to trial. Andrew Sole who financed some of the conduct was not even charged.

Cases cited by the government from this district in other drug case long prison sentence recommendations are not comparable. Cristian Berrelleza-Veduzco, CR 12-62RSL was not only involved in large scale drug distributions but smuggling firearms and robbery. (Govt. rec. 30 years, court sentence 27 years) Clay Roueche, CR07-344 RSL was affiliated with the violent Canadian UN gang. (Govt. rec. 30 years, court sentence 24 years) In contrast, Bradley Woolard has no history of violence or offenses involving firearms.

**Bradley Woolard's Circumstances**

Bradley Woolard is 42 years old. His only felony criminal conviction is from 2004 for the use of a building to grow marijuana. He has several misdemeanor convictions the most recent of which is a DUI in 2010. He has no convictions for crimes of violence or crimes involving firearms. He was not on supervision at the time of this offense, nor has he ever been charged in federal court before.

Bradley Woolard has been described as a hard worker and a good father. His parents and three sisters have stood by him during this ordeal and are there to help him upon his release.



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

**Drug Addiction**

As the evidence at trial made clear, Bradley Woolard suffers from his severe addiction to opiates. His use of opiates began after he suffered a broken ankle in 2001. After his prescribed pain medication ran out he turned to obtaining prescription pain medication on the streets. Eventually he began using "fake" Percocet pills including the very pills he was accused of manufacturing. His wife Shawna Bruns testified that she was aware of him using 15-20 pills per day which he used by crushing, melting and injecting the drugs. During the search of his residence the agents found his drug use kit and a Naloxone kit in case he overdosed on the pills. [4] In his letter to this court, Mr. Woolard acknowledges the harm caused by his conduct.

> Lastly, I now see how my addiction has totally destroyed my life and hurt my family. I tried many times to overcome my opiate addiction, but with only short term success. But my addiction didn't just destroy my life and hurt my children, it hurt many other people beyond my family as well. My past failed attempts at treatment were because I was not fully committed and didn't take to heart what they were trying to teach me. I now see just how wrong I was. Though I was able to function and hide my addiction from most people, I know without a doubt that it led me to where I am today.

**Work History**

Since high school, Bradley Woolard's first job was working at an equipment rental company servicing the equipment. At age 17 he was managing the shop. From a young age he also began learning the construction trade. He began building houses with his father, learned carpentry and welding. From there he started buying fixer upper properties, renovating them and selling them. He continued this trade up until his arrest. He also had a hobby of raising birds as a hobby and for sale. He also worked on cars. He clearly has the employment skills to succeed upon his release.

[4] Photographs of Brad Woolard's drug use kit and the Naloxone kit were introduced as exhibits at the trial. An excerpt of Ms. Bruns testimony about Brad Woolard's drug use is attached.



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

**Age**

A sentence of 144 months would mean Mr. Woolard would not be released until he was over 50 years old. Research has clearly shown that recidivism and criminal activity dramatically decrease with age. Moreover, progressively tougher sanctions are not effective in reducing recidivism. *See* Mears, D., and Cochran, J., *Progressively Tougher Sanctioning and Recidivism, Assessing the Effects of Different Types of Sanctions*, Journal of Research in Crime and Delinquency, Volume 55, Issue 2, pp. 194–241 (March 2018). (Although increasingly tougher punishment among repeat offenders may sometimes reduce recidivism, less severe punishment appears on average to be more effective.) Social science research shows that longer prison sentences increase a defendant's risk of recidivism. *See* Gendreau, P., and Goggin, C., T*he Effects of Prison Sentences on Recidivism*, Solicitor General of Canada (1999) A U.S. Sentencing Commission Report found the pattern is consistent across age groups, as age increases recidivism by any measure declined. Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average.[5]

**Imposition of a Fine**

The government is apparently seeking a fine of $2,000,000. They seek this even though they already seized over $1 million in currency, numerous pieces of jewelry, all of Mr. Woolard's vehicles, a recreational vehicle, construction equipment, trailers, and even a boat. Mr. Woolard has been in custody over three years. His real property is now gone. He has had to hire both a criminal defense lawyer and a divorce lawyer. He has no ability to pay a fine.

[5] The Effects of Aging on Recidivism Among Federal Offenders (ussc.gov)



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

**Conclusion**

The jury verdict requires the court impose a sentence of no less than 120 months. That same verdict found that the firearms located on Mr. Woolard's property were not related to the drug offenses. A sentence of 144 months is "sufficient, but not more than necessary." Such a sentence will severely punish Mr. Woolard, promote respect for the law, and deter others and would not create an unwarranted sentence disparity or impose punishment for going to trial.

DATED this 23rd day of November, 2021.

*/s/Peter A. Camiel*
Peter A. Camiel WSBA 12596



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of July, 2020 I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

*/s/Peter A. Camiel*



**PETER A. CAMIEL**
**CAMIEL & CHANEY P.S.**
**2815 Elliott Avenue, Suite 100**
**Seattle, WA 98121**
**(206)636-1725**