The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>BRADLEY WOOLARD,<br><br>       Defendant. | NO. CR18-217 JCC<br><br>UNITED STATES' SENTENCING MEMORANDUM |

The Government joins the Probation Department and respectfully requests that the Court sentence Mr. Woolard to 240 months (twenty years) imprisonment, as well as a fine of one million dollars ($1,000,000), five years of supervised release, and the $100 penalty assessment per count (totaling $2,800).

## I. DISCUSSION

Mr. Woolard's guidelines ranges is life in prison, calculated as follows:

### A. Guidelines Calculations.

### <u>Group 1 - Counts 1-6, 8, 10, 28, 29, 34, 47, 48 (drug trafficking charges):</u>

| | |
|---|---|
| Base Offense Level (USSG § 2D1.1(c)(1)) | **38** |
| Possession of a firearm/dangerous weapon (USSG § 2D1.1(b)(1) | **+2** |

| | |
|---|---|
| Misrepresenting or marketing fentanyl/analogues as another substance (USSG § 2D1.1(b)(13)) | **+4** |
| Aggravating role; directly involved in importation; crime as a livelihood (USSG § 2D1.1(b)(16)) | **+2** |
| Organizer/leader role in the offense (USSG § 3B1.1(a)) | **+4** |
| Conviction for money laundering (USSG § 2S1.1(b)(2)(B)) | **+2** |
| **Adjusted offense level for drug trafficking offenses** | **52** |
| **Group 2 – Counts 13-27 (money laundering charges)** Base offense level (USSG §§ 2S1.1(a)(2), 2B1.1) | **20** |
| Knowledge that laundered funds were proceeds of drug trafficking (USSG § 2S1.1(b)(1) | **+2** |
| Sophisticated laundering (USSG § 2S1.1(b)(3)) | **+2** |
| **Adjusted offense level for money laundering offenses** | **30** |

Because the adjusted offense level for the drug trafficking charges is more than nine levels higher than the adjusted offense level for the money laundering charges, Mr. Woolard's **total offense level** is **52**. USSG § 3D1.4(c). The government agrees with Probation that Mr. Woolard's only scoreable conviction is his DUI from 2010, giving him a criminal history category (CHC) of I. The government also agrees with Probation that Mr. Woolard's advisory Guidelines range is life imprisonment.

### 1. Base Offense Level and Adjustments

For an analysis of the offense level and adjustments, the government relies on its prior Sentencing Memoranda filed for Mr. Isham and Mr. Pelayo. *See* dkt. # 961 (Isham), and # 964 (Pelayo).  However, the government will briefly address two of the adjustments below.

United States' Sentencing Memorandum
*United States v. Woolard*, CR18-217 JCC – 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 2.  Possession of a Dangerous Weapon (USSG § 2D1.1(b)(1))

The Probation Department has correctly applied an enhancement for possession of a dangerous weapon. This enhancement should be applied ". . . if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Application Note, USSG § 2D1.1(b)(1).  Mr. Woolard possessed dozens of guns, thousands of rounds of ammunition, and four silencers. He purchased this "arsenal" (Mr. Pelayo's word), from co-conspirator Jose Lugo. Woolard made threats to kill witnesses, suggesting a willingness to use these weapons (and the silencers) against anyone who might cooperate with authorities and reveal information about this conspiracy. It is not "clearly improbable" that this arsenal was connected with the offense.

### 3.  Importation (USSG § 2D1.1(b)(16))

This guidelines section applies if "the defendant was directly involved in the importation of a controlled substance." Woolard did not just cause fentanyl and furanyl fentanyl to be imported – he caused it to be manufactured (in China), especially for him; he told the Chinese source of supply that he would to be willing to pay extra to encourage their lab to fill his fentanyl orders. At trial, the government introduced scores of exhibits depicting Woolard's negotiations with Chinese suppliers, such as:

Exhibit 576: Woolard e-mailed a Chinese supplier, "My clients want opiate type or fent analogs as well as benzodiazepines. Along with mdma type products. I have a vast customer base so I'll be a bulk buyer."  He wrote that he, "hope[s] that we can develop a long-term relationship;"

Exhibit 667: In an e-mail to "Mary" (his supplier in China), he and Mary discussed calling the fentanyl "unit 1" for safety's sake, and discussed its purity as "99%"

Exhibit 788: Woolard wrote to Mary, "I will pay 40000$ for 2kg;"

Exhibit 789: Woolard to Mary: "I wish u could deliver 10 kg but two will get me by a while;"

United States' Sentencing Memorandum
*United States v. Woolard*, CR18-217 JCC – 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit 820: Mary says, "Our mistake, we sent you 1.3 kilos of Fu-F by mistake."

The above examples do not include the e-mail Woolard sent to Mary, which this Court has seen on multiple occasions, in which Woolard sent a photo depicting the list of package recipients and their addresses, asking Mary to send each of the recipients three, 100 gram packages of fentanyl. The government has also not mentioned the Western Union wire transfer records, or the testimony of K.S. or R.T., showing how Woolard paid for the drugs he imported. The evidence of Woolard importing fentanyl and its analogues into the United States is overwhelming.

**B.      The Defendant's History and Characteristics.**

Bradley Woolard was a man ahead of his time. In 2015, while the fentanyl crisis was still in its infancy in the Western District of Washington, Mr. Woolard saw the enormous profits he could generate off the addiction and misery of others. Such vision is not the only characteristic of Mr. Woolard's the government is asking the Court to consider in its sentencing. There is also his lifetime of drug trafficking. His arsenal of weapons. The thousands of rounds of ammunition. The silencers, which are made for one purpose and one purpose only. The hundreds of thousands of dollars and gold hidden throughout his home. His desire to create a "trail of treatment" to avoid prison. Using the drug addiction of others to pay for his own high-end drug treatment in Mexico and Costa Rica.[1] The threats to kill a cooperating witness and make it "look like a suicide." The fact that inside the Federal Detention Center, Woolard sent an emissary to contact witness R.T., who the emissary brought R.T. to Woolard's cell in the FDC, where Woolard told R.T. he should "move to Ecuador" rather than cooperate in this case. The fact that

---

[1] While at the spa-like Holistic Sanctuary, Woolard continued to communicate with Pelayo, offering to help Pelayo trouble shoot their pill presses. Thus, even when Woolard should have been gaining a fuller understanding of the misery of addiction, he was completely indifferent to those who would buy and consume the pills he and Pelayo pressed and sold.

United States' Sentencing Memorandum
*United States v. Woolard*, CR18-217 JCC – 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

another witness, K.S., testified that someone contacted him inside the FDC and warned him he would be harmed if he "snitched" in this case.

The totality of this evidence suggests that even inside prison, Woolard has the means, influence, and desire to harm others, to live like a Big Man, and to carry out the threats he asserts. In other words, Bradley Woolard thinks he is above the law. He thinks he is smarter than everyone else, and thinks he can buy his way out of trouble. Those are his characteristics, and that is his history.

**C.    The Nature and Circumstances of the Offenses.**

The nature and circumstances of this offense were depicted in extraordinary detail during this trial, and in the many pleadings filed in this case. The government does not believe the Court needs additional information in this regard.

What may bear emphasis, however, is the growing awareness of the tragedy that is the fentanyl crisis, a crisis from which Woolard saw only an opportunity to profit. On November 21, the New York Times published an article entitled, "Inside Fentanyl's Mounting Death Toll: 'This is Poison.'" The columnist described fentanyl as the "third wave" of the opioid crisis, which began in the 1990's with prescription pain pills, then veered to heroin, and has now evolved to its worst drug yet. See,

https://www.nytimes.com/2021/11/20/nyregion/fentanyl-opioid-deaths.html

The article explains how cartels and "small-time manufacturers" have flooded U.S. streets with cheap fentanyl imported from China. A drug rehab expert was quoted as saying, "These are no longer street drugs . . . This is poison."

**D.  The Imposition of a Fine**

In light of the above, the government requests a fine of one million dollars. The reasonable inferences, from the totality of evidence adduced at trial, are that Mr. Woolard is a wealthy man and has the ability to pay a substantial fine. This evidence includes (but is not limited to) a text dated July 10, 2018, when Woolard bragged to A. S., "I'm sitting on 1.7 [million] plus I'll have 600k in the bank next month." (Exhibit One, Excerpt from

United States' Sentencing Memorandum
*United States v. Woolard*, CR18-217 JCC – 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Government Closing PowerPoint).  On another occasion, Mr. Woolard told A.S. that he (Woolard) had "enough fentanyl to make $12 million in pills." DEA agents testified they recovered approximately one million dollars in cash and gold from Woolard's house. Testimony revealed that Mr. Woolard was investing in Bitcoin in the Spring of 2018, when BTC traded for roughly $6,600 per Bitcoin. It is now worth more than $56,000 per Bitcoin, an 800% increase in value. Thus, a few hundred thousand dollars invested in BTC in 2018 would be worth millions today. Summary testimony showed that Mr. Woolard's scheme, when calculating the number of pills that could have been made from all the binders and fillers ordered in the conspiracy, could have earned more than $25 million in sales *at the wholesale level*, with a street value two to three times that amount. While the government is not asserting that Mr. Woolard made those sorts of profits, he certainly made a fraction of that, well into the millions.

As noted in previous filings submitted by the government, the Sentencing Guidelines provide that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." USSG § 5E1.2(a). For Count One, 21 U.S.C. § 841(b)(1)(A), the Court may impose a sentence up to ten million dollars. USSG § 5E1.2(c)(4). The Court is not required to articulate specific findings of fact concerning a defendant's ability to pay a fine. *See, e.g., United States v. Quan–Guerra*, 929 F.2d 1425, 1427 (9th Cir. 1991) (looking to evidence in record as a whole in finding that district court considered relevant factors, rather than requiring specific statement of findings). "The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." USSG § 5E1.2. Finally, the defendant bears the burden of proving indigence. *United States v. Robinson*, 20 F.3d 1030, 1033 (9th Cir. 1994); *see also United States v. Orlando*, 553 F.3d 1235, 1240 (9th Cir. 2009); *United States v. Rafferty*, 911 F.2d 227, 232 (9th Cir. 1990).  Woolard has not met this burden, nor can he.

United States' Sentencing Memorandum
*United States v. Woolard*, CR18-217 JCC – 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.     CONCLUSION

It is hard to put into words how awful and frightening the fentanyl epidemic has beeen for so many parents, families, sons, and daughters in this District. The judicial system cannot solve that epidemic through its sentence. However, this Court can speak to the families who Mr. Woolard has caused to suffer, and speak to the gravity of that epidemic, through the gravity of its sentence.

Dated this 23d day of November, 2021.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

/s/ *Mike Lang for*
MIKE LANG
KARYN S. JOHNSON
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:    (206) 553-7970

United States' Sentencing Memorandum
*United States v. Woolard*, CR18-217 JCC – 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970